UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

LILLIE LEON,                                     :

                       Plaintiff,              :

     v.                                        :
                                     :

THE DEPARTMENT OF EDUCATION,                     :
a/k/a THE CITY SCHOOL DISTRICT OF                :
THE CITY OF NEW YORK; and PAULA                  :
CUNNINGHAM, in her individual and                :
official capacities,                             :

                       Defendants.             :

-------------------------------------------------------X



<u>DECISION & ORDER</u>
10-CV-2725 (WFK) (ARL)

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 2 9 2017 ★

BROOKLYN OFFICE

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 15, 2010, Lillie Leon ("Plaintiff") filed her *pro se* Complaint in this action, ECF No. 1, which she subsequently amended on August 13, 2012, after having obtained legal counsel, ECF No. 39.[1] As relevant to the instant motion, the Amended Complaint sets forth claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 11201–12213; section 296 of the New York State Executive Law ("NYSHRL"); and section 8-107 of the New York City Administrative Law ("NYCHRL"); as well as state common law claims of intentional infliction of emotional distress and defamation. Am. Compl. ¶¶ 81–153. These claims arise out of events that took place while Plaintiff was employed by the New York City Department of Education ("DOE") and Paula Cunningham, the Principal of P.S. 117 (together, "Defendants"). *See generally id.* On February 8, 2013, Defendants filed their fully briefed motion to dismiss the Amended Complaint, ECF Nos. 48–50, which this Court granted on April 29, 2014, ECF No. 52. Plaintiff appealed and, on May 22, 2015, the Second Circuit issued a Summary Order affirming this Court's Order as to Plaintiff's hostile work environment and First Amendment retaliation claims and all of her claims relating to alleged conduct that occurred prior to the 2010–11 school year. ECF No. 57. The Second Circuit reversed and remanded the claims arising from the 2010–11 school year. *Id.* On February 21, 2017, Defendants filed their fully briefed motion for summary judgment as to all remaining claims. ECF Nos. 82–87. For the reasons discussed below, Defendants' motion is GRANTED.

---

[1] Plaintiff first obtained representation by March 10, 2011, *see* ECF No. 13, and numerous counsel have represented her over the course of the litigation, *see* ECF Nos. 17, 19, 56, 64, 67, 68, 71. By November 2016, in the middle of the briefing schedule for the instant motion, Plaintiff informed the Court that she had terminated the attorney representing her at that time and, accordingly, she sought an extension of time to file her Opposition. ECF No. 72. The Court granted this request, as well as her subsequent request for an extension of time so that Plaintiff could obtain new counsel, which was filed December 21, 2016. ECF No. 74. Plaintiff never secured counsel, however, and ultimately filed her Opposition *pro se. See* ECF No. 86. The Court treats Plaintiff as *pro se* for the purposes of this motion.

## BACKGROUND[2]

Plaintiff, who was eighty years of age at the time she filed her Amended Complaint, has worked as a teacher for Defendant DOE since 1978. Am. Compl ¶¶ 6, 16. The events that gave rise to this litigation took place before and during the 2010–11 school year, when Plaintiff was a tenured teacher at P.S. 117 in Queens, New York. Defs.' Rule 56.1 Statement ("Defs.' Facts") ¶¶ 1–3, 15, ECF No. 83.

P.S. 117 is a two-wing school building: One wing was recently renovated, and so all of its classrooms have air conditioning and their own separate bathrooms; the other wing is eighty-three years old, and its classrooms are not air conditioned. *Id.* ¶¶ 19–20. In general, classroom location at P.S. 117 is organized by grade "so that students of similar grades are grouped together within the building." *Id.* ¶ 19. Kindergarten and first-grade classrooms are generally in the new wing of the building. *Id.* ¶ 20. The pre-kindergarten classroom—Room 114—presents something of an exception, as it is in the old wing of the building, so it is not air-conditioned, but it has its own bathroom. *Id.* ¶ 24. But Room 114 is also "the largest room in the school," and because pre-kindergarten students are each allocated a certain number of square feet of classroom space, and their classroom is "supposed to have a bathroom," pre-kindergarten is held in Room 114. Englander Decl. Ex. F, at 194:20–95:6, ECF No. 85-6.

---

[2] Under the Local Rules of this Court, parties to a summary judgment motion are required to each submit a statement of material facts. E.D.N.Y. R. 56.1(a) & (b). Rather than reiterating undisputed facts, the nonmoving party is tasked with responding to each of the facts offered by the moving party; each fact that is not "specifically controverted" may be deemed admitted. *Id.* at 56.1(b) & (c). Plaintiff, the nonmoving party here, submitted a Rule 56.1 statement that does not conform to the Court's rules and, perhaps more significantly, does not admit or deny Defendants' facts. The facts within Defendant's Rule 56.1 statement are therefore deemed admitted. *See Gadsen v. Jones Lang Lasalle Ams., Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) (Motley, J.) (noting "Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party" and citing cases). "*Pro se* litigants are 'not excused from meeting the requirements of Local Rule 56.1.'" *Lee v. Starwood Hotels & Resorts Worldwide, Inc.*, 14-CV-5278, 2016 WL 3542454, at *7 (S.D.N.Y. June 22, 2016) (Failla, J.) (quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (Freeman, J.)). The Court is mindful of Plaintiff's *pro se* status, however, and "conduct[ed] its own independent review of the record" in determining the facts of the case. *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 406 (S.D.N.Y. 2012) (Karas, J.).

Ahead of each school year, including the 2010–11 school year, Plaintiff and the other teachers were permitted to "submit bid sheets listing their top three choices" in terms of classes they would teach during the following academic year. Defs.' Facts ¶¶ 25–29. Plaintiff, who is licensed to teach, and has in fact taught, pre-kindergarten through sixth grade, Englander Decl. Ex. E, at 12:6–14:12, ECF No. 83-5, ranked pre-kindergarten first, kindergarten second, and first grade third, Defs.' Facts ¶¶ 28–29. Defendant Cunningham—who, as P.S. 117's principal, makes teaching assignments based on a number of factors, including teachers' seniority, preferences, and evaluations—assigned Plaintiff to kindergarten, her second choice. *Id.* ¶¶ 25–30.

Plaintiff had previously expressed a preference for non-air-conditioned classrooms because she has allergies, and so her class for the 2010–11 year was assigned to Room 113 in the old wing of the school—a room in which Plaintiff had taught in without issue on at least one prior occasion. *Id.* ¶¶ 25–30. Room 113, however, did not have a bathroom, "which required that [P]laintiff take her students to the bathroom for the first two weeks of the school year until they became familiar with the bathroom locations and could go on their own." *Id.* ¶ 36; *see also id.* ¶ 37 (noting kindergarten classrooms are not required to have bathrooms). Plaintiff did not want to "bathroom"[3] her students, although she testified that she was physically able to do so. *See* Englander Decl. Ex. F, at 323:10–27:19. *But see* Am. Compl. ¶¶ 87–88 (noting Plaintiff suffered from severe arthritis in her knees that limited her ability to walk); Defs.' Facts ¶ 64 (noting Plaintiff had medical accommodations on file for elevator use and a special parking space). She also protested that Room 113 was uncleanly and "did not have age appropriate

---

[3] "Bathroom" is used as a verb by both parties in this litigation to describe the task of escorting students to the restroom during instructional time.

furniture"—opinions that she also communicated to the parents of the children in her class.
Defs.' Facts ¶¶ 51–57.

Plaintiff's complaints and complaints from her students' parents, over both the condition
of Room 113 and Plaintiff's refusal to bathroom the children, led to the following sequence of
events:

- Plaintiff and her union representative met with Principal Cunningham and two assistant
principals, who proposed Plaintiff move to Room 133, which had a bathroom. *Id.* ¶ 43.

- When Plaintiff refused this option because Room 133 is in the new wing and has air
conditioning, Defendant Cunningham "offered to turn off the air-conditioning" for
Plaintiff. *Id.* ¶¶ 44–45.

- When Plaintiff nevertheless continued to refuse to move, Defendant Cunningham told
Plaintiff "she could remain in [R]oom 113, and that she would be required to bathroom her
students, consistent with her job description," which Plaintiff declined to do, ultimately
forcing Defendant Cunningham "to send other staff members to bathroom [P]laintiff's
students." *Id.* ¶¶ 45–49.

- Responding to continued concern about classroom conditions from parents of children in
Plaintiff's class, Defendant Cunningham moved the class out of Room 113 into Room 133,
which had, *inter alia*, more modern furnishings. *Id.* ¶¶ 57–59.

- Defendant Cunningham again offered to turn off the air conditioning, but Plaintiff instead
simply refused to report to that classroom. *Id.* ¶¶ 59–60, 70.

- Plaintiff also refused an assignment to tutor a small group of students, either in Room 358,
which was not air conditioned and was accessible by elevator, or in the cafeteria, which
was on the first floor of the building and thus accessible without requiring climbing stairs.
*Id.* ¶¶ 73–89.

In sum, Plaintiff refused four different assignments throughout the 2010–11 school year and, at
the end of the academic year and after a hearing held pursuant to section 3020-a of the New York
State Education Law, Plaintiff was terminated. *Id.* ¶¶ 90–101.

According to Plaintiff, her assignment to her second choice of teaching kindergarten (instead of pre-kindergarten), her initial assignment to teach in Room 113, her subsequent assignment to teach in Room 133, and her termination at the end of the 2010–11 school year were discriminatory based on age and disability, as well as retaliatory; Defendants' attempts to make accommodations for Plaintiff's limitations and/or disabilities were insufficient; and she sustained injuries, including emotional distress, from Defendants' conduct. *See generally* Pl.'s Opp'n ("Opposition"), ECF No. 76. Defendants disagree, and move for summary judgment as to all of Plaintiff's remaining claims. *See generally* Defs.' Mem. in Supp. Mot. Summ. J. ("MSJ"), ECF No. 84. The Court now addresses Defendants' motion.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by citation to materials in the record, including depositions, affidavits, declarations, and electronically stored information. Fed. R. Civ. P. 56(a)–(c). Affidavits and declarations, whether supporting or opposing a summary judgment motion, "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*; *see also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

"In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to answer "the threshold inquiry of whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). The Court must therefore consider whether the record could "lead a rational trier of fact to

find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence" in support of the non-movant will not defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Nor will conclusory statements, devoid of specifics, defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the non-moving party must establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.").

"When considering a dispositive motion made by or against a *pro se* litigant, the court is mindful that a *pro se* party's pleadings must be 'liberally construed' in favor of that party and are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Angulo v. Nassau County*, 89 F. Supp. 3d 541, 548–49 (E.D.N.Y. 2015) (Bianco, J.) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). "The Second Circuit 'liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.'" *Id.* (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). Notwithstanding this less rigorous standard, "proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by

evidence[] are insufficient to overcome a motion for summary judgment." *Parkinson v. Goord*, 116 F. Supp. 2d 390, 393 (W.D.N.Y. 2000) (Larimer, C.J.).

## DISCUSSION

### I.   Failure to Accommodate Medical Disability Claims

Plaintiff brings claims for failure to accommodate a medical disability under three separate statutes: the ADA, the NYSHRL, and the NYCHRL.[4] *See generally* Am. Compl. These claims center around her status "as an 80 year old teacher with an apparent/obvious disability," which left her with "no other choice than to initially refuse" her assignment to teach kindergarten in Room 113 for the 2010–11 year because it involved bathrooming her students. Opp'n at 4–5. Plaintiff similarly asserts she was left with "no other choice than to refuse" her three subsequent alternative assignments "in order to prevent unnecessary pain, suffering and repeated sickness" and to avoid other "safety issue[s]." *Id.* at 5–10. The Court now addresses the legal merit of these arguments.

The statutes Plaintiff invokes "require an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer." *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). To prevail on a failure-to-accommodate claim, a plaintiff must show that: "(1) [she] is a person with a

---

[4] "A claim of disability discrimination under the NYSHRL is governed by the same legal standards as govern federal ADA claims." *Morse v. JetBlue Airways Corp.*, 941 F. Supp. 2d 274, 292 (E.D.N.Y. 2013) (Matsumoto, J.). Although "the New York City Council has rejected" complete equivalence between NYCHRL and NYSHRL claims, New York state and federal statutes nevertheless establish the "floor below which the City's Human Rights law cannot fall." *Id.* (internal quotation marks omitted) (first quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); then quoting N.Y.C. Local Law No. 85). "Because a motion for summary judgment inquires only as to whether a 'rational factfinder could find in favor of the non-moving party,' as opposed to what the ceiling of a claim may be, the court herein applies an identical analysis to plaintiff's ADA, NYSHRL, and NYCHRL claims." *Id.* (quoting *Graves v. Finch Pruyn & Co., Inc.*, 353 F. App'x 558, 560 (2d Cir. 2009)). Although the analysis itself is the same, the Court "consider[s] separately whether [Plaintiff's NYCHRL] claim is actionable under the broader New York City standards." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* (quotation marks omitted) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009)).  Where an "employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'"  *Id.* (quoting *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996)).

An accommodation is reasonable if it "enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(ii), (iii).  Nevertheless, "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 95.  "Reasonable accommodation may take many forms, but it must be effective." *Id.*  The Court finds there can be no dispute that Defendants provided reasonable accommodations here.[5]

The uncontested facts show that Defendants made three separate attempts—on this record, two more than were necessary—to accommodate Plaintiff's disabilities, even including those for which Plaintiff did not have a medical accommodation from Defendant DOE.[6]  First, Defendants moved Plaintiff's kindergarten class to Room 133, which was on the first floor and

---

[5] On the Court's reading of the record, there may have been no basis for any accommodation whatsoever, notwithstanding the medical accommodations Plaintiff had on file, because she maintained she was physically able to bathroom students. Englander Decl. Ex. F, at 323:10–27:19. The Court need not decide this issue because, in any event, Plaintiff cannot prove the fourth element of a failure-to-accommodate claim.

[6] The parties agree that Plaintiff "had accommodations on file for elevator use and a special parking space," having successfully submitted medical accommodation requests to Defendant DOE's Medical Bureau, but did not have a similar accommodation request for a non-air-conditioned room. Defs.' Facts ¶¶ 63–64.

had a bathroom and age-appropriate furniture, and turned off the air-conditioning in that room, *see* Defs.'Facts ¶¶ 19–20, 43–45, 51, 59–65; second, Defendants assigned Plaintiff to tutor students in Room 358, which was accessible by elevator and not air conditioned, *see id.* ¶¶ 72, 75, 77; and third, Defendants assigned Plaintiff to tutor students in the cafeteria, which "was on the ground floor of the school, such that [P]laintiff did not have to traverse stairs to reach it," *id.* ¶¶ 84–85.

Plaintiff's objections that the accommodations Defendants made were not reasonable are unavailing. Regarding her reassignment to Room 133, Plaintiff argues turning the air conditioning off was insufficient because "there is air that comes under the door." Englander Decl. Ex. F, at 374:2–14. But Plaintiff does not have a medical accommodation for a non-air-conditioned room and, even if she did, the reasonable accommodation requirement "does not require the perfect elimination of all disadvantage that may flow from the disability," *Fink v. N.Y.C. Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995), meaning a classroom that is allegedly drafty is insufficient to render the accommodation unreasonable. Plaintiff's concerns about Room 358's fire safety and whether she would be safe in the event of a fire are only tangentially related to her claimed medical accommodations and, more to the point, are unfounded given that the fire department inspected the room, the school, and the fire safety plan—at Plaintiff's request—and did not find any deficiencies. Englander Decl. Ex. F, at 172:5–73:5; 396:32–99:14. And Plaintiff's determination that the cafeteria was "life-threatening" and not "educationally sound" is unsupported by the record, and the latter is unrelated to any of her claimed medical accommodations.[7] *Id.* at 399:22–402:10. There is thus nothing in the record that contravenes the reasonableness of any of the accommodations Defendants offered.

---

[7] Further, in light of the reasonable accommodations offered to Plaintiff, any argument that Defendants violated the law by failing to assign Plaintiff to teach pre-kindergarten (which was in Room 114—the only room without air

Finally, there is no support for Plaintiff's claim that "Defendants refused to enter into an interactive process of negotiation" with her.  Am. Compl. ¶ 101; *cf.* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.").  To the contrary, there is no dispute that Defendants engaged in numerous discussions with Plaintiff about where and what Plaintiff would teach and offered Plaintiff multiple options that would have addressed concerns Plaintiff raised during those conversations. And after offering Plaintiff these various accommodations, there certainly was no need for Defendants to make further efforts beyond those conversations because "[t]he point of engaging in an interactive process is to 'discover[] a means by which an employee's disability could have been accommodated.'"  *Noll*, 787 F.3d at 98 (quoting *McBride*, 583 F.3d at 101).  Where, as here, the end the process "is designed to serve . . . had already been achieved," no additional process is required.  *Id.*

Applying the above analysis and "construing the NYCHRL liberally," the Court again finds that Defendants "engaged in the required 'interactive process' with [Plaintiff]" and "ultimately offered her a reasonable accommodation."  *Martinez v. Mount Sinai Hosp.*, 670 F. App'x 735, 736 (2d Cir. 2016).  This is because, no matter how generously the Court construes Plaintiff's claims, she has "fail[ed] to prove the [challenged] conduct is caused at least in part by discriminatory or retaliatory motives."  *Mihalik*, 715 F.3d at 113.  In sum, as there is no genuine dispute that Defendants afforded Plaintiff reasonable accommodations as contemplated by the ADA, the NYSHRL, and the NYCHRL, the Court finds for Defendants on these claims.

---

conditioning but that has a bathroom) or first grade (for which teachers are not required to bathroom students)is plainly foreclosed. *Cf. Noll*, 787 F.3d at 95 (clarifying employers are not required to provide "a perfect accommodation or the very accommodation most strongly preferred by the employee").

—10—

## II.    Discrimination and Retaliation Claims

Plaintiff also brings claims for discrimination and retaliation under the ADA, ADEA, NYSHRL, and NYCHRL. *See generally* Am. Compl.  Specifically, she argues her assignment to teach kindergarten for the 2010–11 school year, her initial classroom reassignment, her subsequent teaching and classroom reassignments, and her ultimate termination represented discrimination and retaliation based on her age and disabilities. *See generally* Opp'n.  The Court disagrees.

The burden-shifting framework that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*, 41 U.S. 792, 802–04 (1973), governs both discrimination and retaliation claims brought under the ADA, the ADEA, and the NYSHRL.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 110 (2d Cir. 2010) (discussing discrimination and retaliation claims under the ADEA); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (discussing retaliation claims under the NYSHRL); *Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48–49 (2d Cir. 2002) (discussing discrimination claims under the ADA); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (discussing retaliation claims under the ADA); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (discussing discrimination claims under the NYSHRL). Under the *McDonnell Douglas* framework, (1) the plaintiff must first establish a *prima facie* case of discrimination; (2) if the plaintiff successfully does so, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason" for the challenged conduct; and (3) if the defendant successfully carries its burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a

—11—

pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).

The Court assumes Plaintiff has succeeded at the first step.[8] *Cf. Burdine*, 450 U.S. at 253 (explaining burden of making out a *prima facie* case is "not onerous").  At the second step, Defendants have proffered substantial evidence that each of the actions Plaintiff challenges was "reasonably attributable to an honest even though partially subjective evaluation" of the relevant factors such that "no inference of discrimination can be drawn." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001).  According to Defendants, Plaintiff's initial assignment to teach kindergarten in Room 113 was based on P.S. 117's assignment system— which took into account not just seniority, but also other teachers' preferences and teaching evaluations—and on Plaintiff's previously expressed preference to teach in non-air-conditioned classrooms.  Defs.' Facts ¶¶ 26, 33.[9]  As discussed extensively, *supra*, Plaintiff's subsequent reassignments plausibly represented Defendants' efforts to make reasonable accommodations for the health issues Plaintiff described.  To the extent Plaintiff argues Defendants' decision not to reassign Plaintiff to teach first grade—a request Plaintiff made after the school year began—was discriminatory and retaliatory, Defendants explained switching teachers during the school year would have been disruptive.  *Id.* ¶ 69.  And Defendants explained they terminated Plaintiff from her position because Plaintiff had declined to fulfill her job responsibilities for an entire school year.  *Id.* ¶¶ 90–91; *see also id.* ¶¶ 95–101 (summarizing decision of from hearing held pursuant

---

[8] The Court notes that, while there are minor differences in the requisite showing for a *prima facie* case of discrimination from that of retaliation, and that the basis for the discrimination or retaliation differs across statutes, such distinctions are not pertinent to the outcome in the instant case.

[9] It is perhaps worth pointing out that, for the 2010–11 school year, four other teachers in addition to Plaintiff requested pre-kindergarten as their first choice, and Plaintiff had previously had the opportunity to teach pre-kindergarten on two separate occasions: once during the 2007–08 school year, and again during the 2009–10 school year; she taught kindergarten during the intervening 2008–09 school year.  Defs.' Facts ¶¶ 18, 28.

to section 3020-a of the New York State Education Law, which determined termination was appropriate because Plaintiff "repeatedly neglected her duties").

For her part, Plaintiff does not offer any evidence from which a reasonable factfinder could conclude that these reasons were mere pretext. This failure—and indeed, her inability to show even that she was treated less well than other employees at all, let alone on the basis of her age or disability—defeats even the claims brought under the NYCHRL, which applies a less rigorous standard, but still requires some evidence that Defendants were motivated by discrimination or retaliation. *See Mihalik*, 715 F.3d at 109. In the absence of any such evidence, the Court grants summary judgment for Defendants on all Plaintiff's discrimination and retaliation claims.

## III. State Law Tort Claims[10]

Plaintiff also brings claims of intentional infliction of emotional distress ("IIED") and defamation under New York law, arising from the incidents discussed *supra* that occurred during the 2010–11 school year and resulted in her termination. Am. Compl. ¶¶ 144–53. The Court turns lastly to these claims, and grants Defendants' request for summary judgment as to each.

### A. Intentional Infliction of Emotional Distress

To prevail on an IIED claim under New York law, "a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140,

---

[10] Because the Court grants summary judgment on the merits, it does not consider whether Plaintiff's state law claims, including those brought pursuant to the NYSHRL and the NYCHRL, are time-barred because they were first raised in the Amended Complaint, which was arguably filed outside of the one-year statute of limitations that applies to claims against Defendant DOE, or whether they relate back to the date of the original Complaint because it adequately (particularly in light of Plaintiff's *pro se* status) sets forth the relevant "conduct, transaction or occurrence" from which the new claims arise. *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006).

157–58 (2d Cir. 2014).  Critically, "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of infliction of emotional distress because the conduct alleged is not sufficiently outrageous." *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, 00-CV-5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) (Daniels, J.).  The undisputed facts, as discussed in this opinion, simply do not meet that very high bar.  The Court thus grants summary judgment in favor of Defendants on Plaintiff's IIED claim.

### B.  Defamation

To prevail on a claim of defamation under New York law, a plaintiff must establish the following elements: (1) a written or oral defamatory statement of fact concerning the plaintiff; (2) publication of that statement to a third party; (3) fault, which here may be negligence; (4) that the defamatory statement is false; and (5) special damages or that the statement was defamatory on its face. *E.g.*, *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). "New York state courts require a plaintiff to state defamation claims with particularity, setting forth 'the particular words complained of,' though 'their application to the plaintiff may be stated generally.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (Oetken, J.).

Having reviewed the record, the Court finds that Plaintiff has nowhere stated with any degree of specificity the allegedly defamatory statements Defendants made in connection with the 2010–11 school year.  Plaintiff's allegations that Defendants "falsely accused Plaintiff of insubordination, neglect of duty, substantial cause rendering Plaintiff unfit to perform her obligations properly to the service, violations of by-laws, rules or regulations of the Chancellor, conduct unbecoming Plaintiff's position or conduct prejudicial to the good older [sic], efficiency, or discipline of the service, and incompetence," Am. Compl. ¶ 64, is insufficiently particular.

And even considering every single one of the statements attributed to Defendants, there is no indication any was ever published to a third party or that any statement was false. Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's defamation claim.

## CONCLUSION

One final undisputed fact is that Plaintiff dedicated over three decades of her life to educating young children and endeavoring to make a positive difference in their lives. This Court does not overlook her efforts. And while the Court regrets that Plaintiff's tenure ended under contentious and unpleasant circumstances, there is nevertheless no remedy at law available to ameliorate those circumstances or their aftereffects. Defendants' motion for summary judgment is therefore GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 82, and close the case.

SO ORDERED.

s/ WFK II
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: Brooklyn, New York
September 29, 2017

—15—